Civil Investigative Demand-Documentary Material/Written Interrogatories

# United States Attorney's Office
**District of New Mexico**

TO:    Four Winds Behavioral Health Center                          Civil Investigative Demand
       Four Winds Behavioral Health, Inc.                                 No. DNM 20-08
       c/o Michael B. Drennon
       4100 Barbara Loop SE
       Rio Rancho, New Mexico 87124

This Civil Investigative Demand is issued pursuant to the False Claims Act, 31 U.S.C. §§ 3729-3733 (the "FCA"), in the course of a False Claims Act investigation to determine whether there is or has been a violation of 31 U.S.C. § 3729. The False Claims Act investigation concerns allegations that Four Winds Behavioral Health, Inc., Four Winds Behavioral Health Center, its owners, and certain employees, have violated the FCA by billing the Government for therapy services that (1) were not provided, (2) were furnished by unqualified personnel, (3) were billed under the credentials of personnel who did not furnish the services, and/or (4) were billed as inpatient services despite being delivered in an outpatient setting.

This Demand requires you to provide documents and answers to written interrogatories to the Federal Government. This is the original of the Demand; no copies have been served on other parties. The information and documents provided in response to this Demand may be shared, used, and disclosed as provided by 31 U.S.C. § 3733.

### Documents Request

In accordance with the Definitions and Instructions set forth in **Attachment A** and the production specifications set forth in **Attachment B**, you are required by this Demand to produce any and all of the documents set forth in **Attachment C**, which are in your possession, custody, or control.

You must make this material available to Sean M. Cunniff, who has been designated as a False Claims Act custodian in this case. Mr. Cunniff may be contacted at (505) 224-1473 if you have any questions. These documents shall be produced no later than thirty (30) days from the receipt of this Demand, at the office of the United States Attorney, 201 Third Street NW, Suite 900, Albuquerque, NM 87102, or at another location to be mutually agreed upon by yourself and the False Claims Act custodian. The production of documentary material in response to this Demand must be made under a sworn certificate in the form printed in this Demand.

-2-

## Written Interrogatories

In accordance with the Definitions and Instructions set forth in **Attachment A**, you are required by this Demand to answer the interrogatories set forth in **Attachment D**. The answers to interrogatories shall be submitted no later than twenty (20) days from the receipt of this Demand, at the office of the United States Attorney, 201 Third Street NW, Suite 900, Albuquerque, NM 87102, or at such time and in such other places as may be agreed upon by you and the False Claims Act custodian. The interrogatories shall be answered separately and fully in writing under oath and also shall be submitted under a sworn certificate in the form printed in this Demand. If you object to any interrogatory, the reasons for the objection shall be stated with specificity.

Issued this 13th day of November, 2020.

JOHN C. ANDERSON
United States Attorney
District of New Mexico

SEAN M. CUNNIFF
Assistant United States Attorney
False Claims Act Custodian

Exh. 1 002

**FORM OF CERTIFICATE OF COMPLIANCE FOR DOCUMENT PRODUCTION**[1]

I have responsibility for producing the documents requested in Civil Investigative Demand No. DNM 20-08. I hereby certify that all the materials required by that Civil Investigative Demand which are in the possession, custody or control of the person to whom the Demand is directed have been submitted to a custodian named therein.

If any such material has not been produced because of a lawful objection, the objection to the document request and the reasons for the objection have been stated.

Signature ———————————————

Title        ———————————————

**SWORN TO** before me this _____ day of

_____, 2020

———————————————————
NOTARY PUBLIC

---

[1] In place of a sworn statement, the above certificate of compliance may be supported by an unsworn declaration as provided for by 28 U.S.C. § 1746.

**FORM OF CERTIFICATE OF COMPLIANCE FOR RESPONSES TO
INTERROGATORIES[1]**

I have responsibility for answering interrogatory numbers_____in Civil
Investigative Demand No. DNM 20-08. I hereby certify that all the information required by the
Civil Investigative Demand and in the possession, custody, control, or knowledge of the person
to whom the Civil Investigative Demand is directed has been submitted. To the extent
information has not been furnished, the information is identified and the reasons why the
information was not furnished are set forth with particularity. Additionally, if any such
information has not been produced because of a lawful objection, the objection to the
interrogatory and the reasons for the objection have been stated. I certify under penalty of perjury
that the foregoing interrogatory responses are true and correct.

Signature ————————————————

Title        ————————————————

**SWORN TO** before me this _____ day of

_____, 2020

————————————————————————

NOTARY PUBLIC

————————————————

[1] In place of a sworn statement, the above certificate of compliance may be supported by an
unsworn declaration as provided for by 28 U.S.C. § 1746.

Exh. 1 004

## VERIFIED RETURN OF SERVICE

I, **Lois Golden**, an employee of the United States working under the direction and supervision of attorney Sean M. Cunniff in connection with a false claims law investigation, hereby certify that at the time of **8:30 am**, on the **13th** day of November, 2020, I personally served Civil Investigative Demand No. DNM 20-08 on Four Winds Behavioral Health Center by depositing an executed copy of said demand in the United States mail by registered or certified mail, with a return receipt requested, addressed to:

Four Winds Behavioral Health Center
Four Winds Behavioral Health, Inc.
c/o Michael B. Drennon
4100 Barbara Loop SE
Rio Rancho, NM 87124

I declare under penalty of perjury that the foregoing is true and correct.

Executed on this **13th** day of November, 2020.

Signature _Lois Golden_

Title _Paralegal Specialist_

## ATTACHMENT A

### DEFINITIONS AND INSTRUCTIONS

#### DEFINITIONS

1.    "Document" and "Documents" are used in the broadest sense permitted by Federal Rule of Civil Procedure 26(b), 34(a), and 45(a), and include, but are not limited to, any hard copy or electronically stored information and emails. *Documents* include *communications*. Production of the above *documents* shall be made in accordance with the general instructions set forth in **Attachment A** and the **Specifications for Production of Electronically Stored Information and Digitized Images** set forth in **Attachment B**.

2.    "*Including*" means including but not limited to.

3.    "*And*," "*or*," and "*and/or*" hall be construed either conjunctively or disjunctively so as to make each particular request inclusive rather than exclusive.

4.    "*Any*" and "*all*" shall be construed conjunctively or disjunctively so as to make each particular request inclusive rather than exclusive.

5.    "*Four Winds Behavioral Health Center*", "*Four Winds*", "*You*" and "*Your*" refers to Four Winds Behavioral Health Center, including any and all predecessors, successors, affiliates, d/b/as, wholly or partially owned subsidiaries, parent companies, branches, divisions, departments, segments, offices, units, owners, officers, directors, employees, representatives, agents, consultants, assigns, or business partners of any entity in which Four Winds has an ownership interest.

6.    "*Medicaid*" refers to the Medicaid program administered by the State of New Mexico, and jointly funded by the State and federal government.

7.    "*Managed Care Organizations*" and "*MCOs*" refers to the health care firms participating as providers in the New Mexico Medicaid program.

8.    "*Claim*" means any request or submission for payment, whether directly claimed or via an intermediary.

9.    "*State*" or "*New Mexico*" refers to the State of New Mexico, and shall be construed to include all agencies, subdivisions, or agents authorized to act on its behalf, and specifically includes the New Mexico Human Services Department.

10.    "*Beneficiary*" or "*Patient*" refers to a person with a Government Health Insurance Plan, *including*, but not limited to *Medicaid*, and who obtains or has obtained your services which are covered in whole or in part by his or her Government Health Insurance Plan.

11.     "*Person*" means any individual, association, business, partnership, corporation, firm, organization, or entity.

12.     "*Employee*" or "*personnel*" shall mean any person including, but not limited to, an employee, volunteer, independent contractor or agent, all past and present directors, officers, agents, representatives, accountants, advisors, and consultants who acted or purported to act on Your behalf or who performed any service for You under Your name, whether on a full-time, part-time, piece-work, commission, or other basis and whether paid or unpaid.

13.     "*Therapist*" means any *employee* who provided or assisted in the provision of therapeutic or counseling services, including intake services, regardless of the *employee's* job title or level of professional licensure.

14.     "*Communication*" is used in the broadest sense permitted by Federal Rule of Civil Procedure 26(b), 34(a), and 45(a), and means any transmission or exchange of information orally or in writing.

15.     "*Describe*" or "*description*" means a request for a complete description and explanation of the facts, circumstances, analysis, opinion, and other information that in any way concern or pertain to, whether directly or indirectly, the subject matter of a specific interrogatory.

16.     "*Identify*" or "*identity*" with respect to a person means provide the name, employer, title, job description, last known physical address, telephone number, and e-mail address.

17.     "*Relating to*" or "*related to*" means consisting of, concerning, referring to, reflecting, supporting, evidencing, prepared in connection with, used in preparation for, or being in any way legally, logically, or factually connected to the matter discussed.

18.     The singular and plural forms of any word shall be construed interchangeably so as to bring within the scope of this Demand any document which might otherwise be construed as outside its scope.

19.     All present tenses of verbs or verb forms shall be construed to include within their meaning the future and past tenses so used, and vice versa.

20.     "*Relevant Time Period*" refers to any time from January 1, 2014 through the date of service of this CID (No. DNM-20-08). Unless otherwise stated, the Relevant Time Period shall apply to each specific document request.

Exh. 1 007

## INSTRUCTIONS

1.    Unless otherwise stated in any specific request below, the relevant time period for each request is from January 1, 2014 through the date of service of this CID, No. DNM-20-08.

2.    This Demand is continuing in nature. If you become aware of or acquire possession, custody, or control of additional documents that are responsive to this Demand, you shall promptly produce such additional documents.

3.    This Demand applies to all documents and information in your possession, custody, or control regardless of their location and regardless of whether such documents or information are held by your current or former employees, including, but not limited to, in-house IT specialists and technicians, IT specialists and technicians to whom digital services have been out-sourced.

4.    All documents produced pursuant to this Demand are to be organized in such a manner that all documents relating to a particular request are grouped together and identified as being responsive to that request.

5.    If any document that is otherwise responsive to this Demand is not disclosed because of a claim of privilege or other objection, you shall identify such documents on a Privilege Log. The Privilege Log shall be produced in Excel or Word format and include the following information:

        (a) the basis for the assertion of the privilege or objection;

        (b) the type of document (e.g., letter, memorandum, email, etc.);

        (c) the name and title of the author (and if different, the preparer and signatory);

        (d) the name(s) and title(s) of the individual(s) to whom the document was addressed;

        (e) the name(s) and title(s) of the individuals to whom the document or a copy of the document was sent or to whom the document or a copy, or any part thereof, was shown;

        (f) the date of the document;

        (g) number of pages;

        (h) a general description of the subject matter; and

        (i) the Request(s) to which the document is responsive.

3

Exh. 1 008

6.    When a requested document contains both privileged and non-privileged material, the non-privileged material must be disclosed to the fullest extent possible. If a privilege is asserted with regard to a part of the material contained in a document, the party claiming the privilege must clearly indicate the portions as to which the privilege is claimed. When a document is redacted or altered in any fashion, identify as to each document the reason for the redaction or alteration, the date of the redaction or alteration, and the person performing the redaction or alteration. Any redaction must be clearly visible on the redacted document.

7.    If any document otherwise responsive to this Demand is not produced because it was lost, destroyed, or discarded:

(a) identify the document by type, date, and title;

(b) identify the person who last had custody or control over the document;

(c) state the date on which the document was destroyed or was discovered to have been lost;

(d) if the document was destroyed, state why it was destroyed and identify the person(s) who destroyed it;

(e) if the document was lost, describe the circumstances in which its loss was discovered, state the date that it was last seen or otherwise accounted for, and identify the person(s) who discovered its loss and who last saw or otherwise accounted for it;

(f) identify all persons who have knowledge pertaining to the destruction or loss of the document, giving a concise but complete statement of the knowledge you claim each such person has;

(g) identify all persons who have knowledge of the contents of each lost or destroyed document, giving a concise but complete statement of the knowledge you claim each such person has; and

(h) produce all existing indices, lists, or other documents in your possession, custody, or control that reflect the existence of such lost or destroyed documents, and/or their transfer or destruction.

8.    If no documents exist that are responsive to a specific document Request, a written statement to that effect shall be provided at the time of production.

9.    To the extent that documents responsive to this Demand are in the possession, custody, or control of third parties, this Demand requires a statement to that effect at the time of production, specifically providing the name, address, telephone number, and principal contact of the third party, and shall further identify those documents in said third party's possession.

4

**ATTACHMENT B**

**SPECIFICATIONS FOR PRODUCTION OF
ELECTRONICALLY STORED INFORMATION AND DIGITIZED IMAGES**

**Collection of Electronically Stored Information** (ESI)
Careful consideration should be given to the methodology, implementation, and documentation
of ESI collection to ensure that all responsive data and metadata are preserved in the collection
process.

1. **Specification Modifications**
   Any modifications or deviations from the Production Specifications may be done only
   with the express permission of the *government*. Any responsive data or *documents* that
   exist in locations or native forms not discussed in these Production Specifications remain
   responsive and, therefore, arrangements should be made with the *government* to facilitate
   their production.

2. **Production Format of ESI and Imaged Hard Copy**
   Responsive ESI and imaged hard copy shall be produced in the format outlined below.
   All ESI, except as outlined below in sections 9 – 20, shall be rendered to type TIFF
   image format, and accompanied by a Concordance® Image Cross Reference file. All
   applicable metadata (see section 3 below) shall be extracted and provided in
   Concordance® load file format.

   a. **Image File Format:** All images, paper *documents* scanned to images, or rendered
   ESI, shall be produced as 300 dpi single-page TIFF files, CCITT Group IV (2D
   Compression). *Documents* should be uniquely and sequentially Bates numbered with an
   endorsement on each image.
   - All TIFF file names shall include the unique Bates number burned into the image.
   - Each Bates number shall be a standard length, include leading zeros in the number,
     and be unique for each produced page.
   - All TIFF image files shall be stored with the ".tif" extension.
   - Images shall be OCR'd using standard COTS products.
   - All pages of a *document* or all pages of a collection of *documents* that comprise a
     folder or other logical grouping, including a box, shall be delivered on a single
     piece of media.
   - No image folder shall contain more than 2000 images.

   b. **Concordance® Image Cross Reference file:** Images should be accompanied by
   a Concordance® Image Cross Reference file that associates each Bates number with its
   corresponding single-page TIFF image file. The Cross Reference file should also contain
   the image file path for each Bates numbered page.
   - Image Cross Reference Sample Format:

     ABC00000001,OLS,D:\DatabaseName\Images\001\ ABC00000001.TIF,Y,,,
     ABC00000002,OLS,D:\DatabaseName\Images\001\ ABC00000002.TIF,,,,

ABC00000003,OLS,D:\DatabaseName\Images\001\ABC00000003.TIF,,,,
ABC00000004,OLS,D:\DatabaseName\Images\001\ABC00000004.TIF,Y,,,

c.    **Concordance® Load File**: Images should also be accompanied by a "text load file" containing delimited text that will populate fields in a searchable, flat database environment. The file should contain the required fields listed below in section 3.

- ASCII text delimited load files are defined using the following delimiters:

| | |
|---|---|
| *Field Separator* | *^ or Code 094* |
| *Text Qualifier* | *\| or Code 124* |
| *Substitute Carriage Return or New Line* | *() or Code 013* |

- The text file should also contain hyperlinks to applicable native files, such as Microsoft Excel or PowerPoint files.
- There should be one line for every record in a collection.
- The load file must contain a field map/key listing the metadata/database fields in the order they appear within the data file. For example, if the data file consists of a First Page of a Record (starting Bates), Last Page of a Record (ending Bates), DOCID, DOCDate, File Name, and a Title, then the structure may appear as follows:

    |BEGDOC#|^|ENDDOC#|^|DOCID|^|DOCDATE|^|FILENAME|^|TITLE|

- The extracted/OCR text for each *document* should be provided as a separate single text file. The file name should match the BEGDOC# or DOCID for that specific record and be accompanied by the .txt extension.

3.    **Required Metadata/Database Fields**

- A "√" denotes that the indicated field should be present in the load file produced.
- "Other ESI" includes non-e-mail or hard copy *documents*, including but not limited to data discussed in sections 6-9 and 12-20 below.

| Field name | Field Description | Field Type | Field Value | Hard Copy | E-mail | Other ESI |
|---|---|---|---|---|---|---|
| COMPANY | Company/Organization submitting data | Full Text | Unlimited | √ | √ | √ |
| BOX# | Submission/volume/box number | Note Text | 10 | √ | √ | √ |
| CUSTODIAN | Custodian(s)/Source(s) - format: Last, First or ABC Dept | Multi-Entry | Unlimited | √ | √ | √ |
| AUTHOR | Creator of the *document* | Note Text | 160 | | | √ |

2

Exh. 1 011

| Field name | Field Description | Field Type | Field Value | Hard Copy | E-mail | Other ESI |
|---|---|---|---|---|---|---|
| BEGDOC# | Start Bates (including prefix) - No spaces | Note Text | 60 | ✓ | ✓ | ✓ |
| ENDDOC# | End Bates (including prefix) - No spaces | Note Text | 60 | ✓ | ✓ | ✓ |
| DOCID | Unique *document* Bates # or populate with the same value as Start Bates (DOCID = BEGDOC#) | Note Text | 60 | ✓ | ✓ | ✓ |
| PGCOUNT | Page Count | Integer | 10 | ✓ | ✓ | ✓ |
| GROUPID | Contains the Group Identifier for the family, in order to group e-mails with their attachments | Note Text | 60 | | ✓ | |
| PARENTID | Contains the *Document* Identifier of an attachment's parent | Note Text | 60 | | ✓ | |
| ATTACHIDS | Child *document* list; Child DOCID or Child Start Bates | Multi-Entry | 60 | ✓ | ✓ | ✓ |
| ATTACHLIST | List of Attachment Bates numbers | Multi Entry | Unlimited | | ✓ | ✓ |
| BEGATTACH | Start Bates number of first attachment | Note Text | 60 | ✓ | ✓ | ✓ |
| ENDATTACH | End Bates number of last attachment | Note Text | 60 | ✓ | ✓ | ✓ |
| PROPERTIES | Privilege notations, Redacted, *Document* Withheld Based On Privilege | Multi-Entry | Unlimited | ✓ | ✓ | ✓ |
| RECORD TYPE | File, E-mail, Attachment, or Hard Copy | Note Text | 60 | ✓ | ✓ | ✓ |
| FROM | Author - format: Last name, First name | Note Text | 160 | | ✓ | ✓ |
| TO | Recipient- format: Last name, First name | Multi-Entry | Unlimited | | ✓ | ✓ |
| CC | Carbon Copy Recipients - format: Last name, First name | Multi-Entry | Unlimited | | ✓ | ✓ |
| BCC | Blind Carbon Copy Recipients - format: Last name, First name | Multi-Entry | Unlimited | | ✓ | ✓ |
| SUBJECT | Subject/*Document* Title | Note Text | Unlimited | | ✓ | ✓ |

3

Exh. 1 012

| Field name | Field Description | Field Type | Field Value | Hard Copy | E-mail | Other ESI |
|---|---|---|---|---|---|---|
| CONVINDEX | E-mail system ID used to track replies, forwards, etc. | Note Text | Unlimited | | ✓ | |
| DOCDATE | *Document* Date/Date Sent - Format YYYY/MM/DD | Date Keyed | YYYY/MM/DD | | ✓ | ✓ |
| BODY | Relative file path of the text file associated with the extracted text or OCR[1] | Full Text | Unlimited | ✓ | ✓ | ✓ |
| TIMESENT | Time e-mail was sent (GMT) | Time | 10 | | ✓ | |
| DATECRTD | Date Created | Date | YYYY/MM/DD | | ✓ | ✓ |
| DATESVD | Date Saved | Date | YYYY/MM/DD | | ✓ | ✓ |
| DATEMOD | Date Last Modified | Date Keyed | YYYY/MM/DD | | ✓ | ✓ |
| DATERCVD | Date Received | Date | YYYY/MM/DD | | ✓ | |
| DATEACCD | Date Accessed | Date | YYYY/MM/DD | | ✓ | ✓ |
| FILESIZE | File Size | Note Text | 10 | | | ✓ |
| FILENAME | File name - name of file as it appeared in its original location | Full Text | Unlimited | | | ✓ |
| APPLICATION | Application used to create native file (e.g. Excel, Outlook, Word) | Note Text | 160 | | ✓ | ✓ |
| FILE EXTENSION | Extension for the file (e.g. .doc, .pdf, .wpd) | Note Text | 10 | | ✓ | ✓ |
| FILEPATH | Data's original source full folder path | Full Text | Unlimited | | ✓ | ✓ |
| NATIVELINK | Current file path location to the native file | Full Text | Unlimited | | ✓ | ✓ |
| FOLDERID | E-mail folder path (e.g. Inbox\Active) or Hard Copy container information (e.g. folder or binder name) | Full Text | Unlimited | ✓ | ✓ | |
| PARAGRAPH | Subpoena/request paragraph number to which the *document* is responsive | Multi-Entry | Unlimited | ✓ | ✓ | ✓ |

---

[1] Section 2.c outlines the format for the Body field ("The extracted/OCR text for each *document* should be provided as a separate single text file. The file name should match the BEGDOC# or DOCID for that specific record and be accompanied by the .txt extension.").

4

Exh. 1 013

| Field name | Field Description | Field Type | Field Value | Hard Copy | E-mail | Other ESI |
|---|---|---|---|---|---|---|
| HASH | Hash value (used for deduplication or other processing) (e-mail hash values must be run with the e-mail and all of its attachments) | Note Text | Unlimited | | ✓ | ✓ |
| MESSAGEHEADER | E-mail header. Can contain IP address | Full Text | Unlimited | | ✓ | |
| ATTACHMCOUNT | Number of attachments associated with a ParentID | Note Text | 10 | | ✓ | |
| FILETYPE | Identifies the application that created the file | Note Text | 160 | | ✓ | ✓ |
| COMMENTS | Identifies whether the *document* has comments associated with it | Note Text | 10 | | ✓ | ✓ |

4. **Search, De-Duplication, Near-Duplicate Identification, E-mail Conversation Threading and Other Culling Procedures**

De-duplication of exact copies within a custodian's data may be done, but all file paths and custodians must be provided for each duplicate *document*. The recipient shall not use any other procedure to cull, filter, group, separate or de-duplicate, or near-de-duplicate, etc. (i.e., reduce the volume of) responsive material before discussing with and obtaining the written approval of the *government*. All objective coding (e.g., near duplicate ID or e-mail thread ID) shall be discussed and produced to the *government* as additional metadata fields. The recipient will not employ analytic software or technology to search identify, or review potentially responsive material, including but not limited to technology assisted review (TAR) or predictive coding, without first discussing with the *government*.

5. **Hidden Text**

All hidden text (e.g. track changes, hidden columns, mark-ups, notes) shall be expanded and rendered in the image file. For files that cannot be expanded, the native files shall be produced with the image file.

6. **Embedded Files**

All non-graphic embedded objects (Word *documents*, Excel spreadsheets, .wav files, etc.) that are found within a file shall be extracted and produced. For purposes of production, the embedded files shall be treated as attachments to the original file, with the parent/child relationship preserved.

7. **Image-Only Files**

All image-only files (non-searchable .pdfs, multi-page .tiffs, Snipping Tool and other screenshots, etc., as well as all other images that contain text) shall be produced with associated OCR text and metadata/database fields identified in section 3 for "Other ESI."

Exh. 1 014

**8.    Encrypted Files**

Any data (whether individual files or digital containers) that is protected by a password, encryption key, digital rights management, or other encryption scheme, shall be decrypted prior to processing for production. The unencrypted text shall be extracted and provided per section 2.c. The unencrypted files shall be used to render images and provided per sections 2.a and 2.b. The unencrypted native file shall be produced pursuant to sections 10-20. If such protected data is encountered but not processed, each file or container shall be reported as an exception in the accompanying Exception Log (pursuant to section 26) and shall include all available metadata associated with the data, including custodian information.

**9.    Hard Copy Records**

   **a.** All hard copy material shall reflect accurate *document* unitization including all attachments and container information (to be reflected in the PARENTID, ATTACHID, BEGATTACH, ENDATTACH and FOLDERID). Unitization in this context refers to identifying and marking the boundaries of *documents* within the collection, where a *document* is defined as the smallest physical fastened unit within a bundle. (e.g., staples, paperclips, rubber bands, folders, or tabs in a binder). The first *document* in the collection represents the parent *document* and all other *documents* will represent the children.

   **b.** All *documents* shall be produced in black and white TIFF format unless the image requires color. An image requires color when color in the *document* adds emphasis to information in the *document* or is itself information that would not be readily apparent on the face of a black and white image. Images identified as requiring color shall be produced as color 300 dpi single-page JPEG files.

   **c.** All *documents* bearing any removable item (such as a tab or adhesive note) which conceals text on the *document* shall be produced twice; one copy with the item in place and one copy with the item removed so the obscured information is visible.

   **d.** All objective coding (e.g., *document* date or *document* author) should be discussed and produced to the *government* as additional metadata/database fields.

**10.   Production of Spreadsheets and Presentation Files**

All spreadsheet and presentation files (e.g. Excel, PowerPoint) shall be produced in the unprocessed "as kept in the ordinary course of business" state (i.e., in native format), with an associated placeholder image. *See* section 20 below. The file produced should maintain the integrity of all source, custodian, application, embedded and related file system metadata. No alteration shall be made to file names or extensions for responsive native electronic files.

**11.   Production of E-mail Repositories**

E-mail repositories, also known as e-mail databases (e.g., Outlook PST, Lotus NSF, etc.), can contain a variety of items, including: messages, calendars, contacts, tasks, etc. For purposes of production, responsive items shall include the "E-mail" metadata/database fields outlined in section 3, including but not limited to all parent items (mail, calendar, contacts, tasks, notes, etc.) and child files (attachments of files to e-mail or other items) with the parent/child relationship preserved. E-mail databases from systems other than

Microsoft Exchange shall be produced after consultation with and written consent of the *government* about the format for the production of such databases.

12. **Production of Items Originally Generated in E-mail Repositories but Found and Collected Outside of E-mail Repositories, i.e., "Stand-alone" Items**
Any parent e-mail or other parent items (e.g., calendar, contacts, tasks, notes, etc.) found and collected outside of e-mail repositories (e.g., items having extensions like .msg, .htm, .mht, etc.), shall be produced with the "E-mail" metadata fields outlined in section 3, including but not limited to any attachments, maintaining the family (parent/child) relationship.

13. **Production of Instant Messenger (IM), Voicemail Data, Audio Data, Video Data, etc.**
The responding party shall identify, collect, and produce any and all data which is responsive to the requests which may be stored in audio or video recordings, cell phone/PDA/Blackberry/smart phone data, tablet data, voicemail messaging data, instant messaging, text messaging, conference call data, video/audio conferencing (e.g., GoTo Meeting, WebEx), and related/similar technologies. However, such data, logs, metadata or other files related thereto, as well as other less common but similar data types, shall be produced after consultation with and written consent of the *government* about the format for the production of such data.

14. **Social Media**
Prior to any production of responsive data from social media (e.g., Twitter, Facebook, Google+, LinkedIn, etc.) the producing party shall first discuss with the *government* the potential export formats before collecting the information.

15. **Productions of Structured Data**
Prior to any production of responsive data from a structured database (e.g., Oracle, SAP, SQL, MySQL, QuickBooks, etc.), the producing party shall first identify the database type and version number, provide the database dictionary and any user manuals, or any other *documentation* describing the structure and/or content of the database and a list of all reports that can be generated from the database. The list of reports shall be provided in native Excel (.xls or .xlsx) format.

16. **Productions of Structured Data from Proprietary Applications**
Prior to any production of structured data from proprietary applications (e.g., proprietary timekeeping, accounting, sales rep call notes, CRMs, SharePoint etc.) the producing party shall first provide the database dictionary and a list of all reports that can be generated from the structured database. The list of reports shall be produced in native Excel (.xls or .xlsx) format.

17. **Production of Photographs with Native File or Digitized ESI**
Photographs shall be produced as single-page JPEG files with a resolution equivalent to the original image as they were captured/created. All JPEG files shall have extracted metadata/database fields provided in a Concordance® load file format as outlined in section 3 for "Other ESI."

7

18. **Images from which Text Cannot be OCR Converted**
An exception report shall be provided when limitations of paper digitization software/hardware or attribute conversion do not allow for OCR text conversion of certain images. The report shall include the DOCID or Bates number(s) corresponding to each such image.

19. **Format of ESI from Non-PC or Non-Windows-based Systems**
If responsive ESI is in non-PC or non-Windows-based Systems (e.g., Apple, IBM mainframes, and UNIX machines, Android device, etc.), the ESI shall be produced after discussion with and written consent of the *government* about the format for the production of such data.

20. **Production of Native Files (When Applicable Pursuant to These Specifications)**
Production of native files, as called for in these specifications, shall have extracted metadata/database fields provided in a Concordance® load file format as defined in the field specifications for "Other ESI" as outlined in section 3.

ESI shall be produced in a manner which is functionally usable by the *government*. The following are examples:

- AutoCAD data, e.g., DWG and DXF files, shall be processed/converted and produced as single-page JPG image files and accompanied by a Concordance® Image formatted load file as described above. The native files shall be placed in a separate folder on the production media and linked by a hyperlink within the text load file.
- GIS data shall be produced in its native format and be accompanied by a viewer such that the mapping or other data can be reviewed in a manner that does not detract from its ability to be reasonably understood.
- Audio and video recordings shall be produced in native format and be accompanied by a viewer if such recordings do not play in a generic application (e.g., Windows Media Player).

21. **Bates Number Convention**
All images should be assigned Bates numbers before production to the *government*. The numbers should be endorsed on the actual images. Native files should be assigned a single Bates number for the entire file. The Bates number shall not exceed 30 characters in length and shall include leading zeros in the numeric portion. The Bates number shall be a unique number given to each page (when assigned to an image) or to each *document* (when assigned to a native file). If the *government* agrees to a rolling production, the numbering convention shall remain consistent throughout the entire production. There shall be no spaces between the prefix and numeric value. If suffixes are required, please use "dot notation." Below is a sample of dot notation:

| | |
|---|---|
| PREFIX0000001 | PREFIX0000003 |
| PREFIX0000001.001 | PREFIX0000003.001 |
| PREFIX0000001.002 | PREFIX0000003.002 |

8

**22.    Media Formats for Storage and Delivery of Production Data**
Electronic *documents* and data shall be delivered on any of the following media:

- **a.** CD-ROMs and/or DVD-R (+/-) formatted to ISO/IEC 13346 and Universal Disk Format 1.02 specifications.
- **b.** External hard drives (USB 2.0 or higher, or eSATA, formatted to NTFS format specifications) or flash drives.
- **c.** Storage media used to deliver ESI shall be appropriate to the size of the data in the production.
- **d.** Media should be labeled with the case name, production date, Bates range, and producing party.

**23.    Virus Protection and Security for Delivery of Production Data**
Production data shall be free of computer viruses. Any files found to include a virus shall be quarantined by the producing party and noted in a log to be provided to the *government*. Password protected or encrypted files or media shall be provided with corresponding passwords and specific decryption instructions. No encryption software shall be used without the written consent of the *government*.

**24.    Compliance and Adherence to Generally Accepted Technical Standards**
Production shall be in conformance with standards and practices established by the National Institute of Standards and Technology ("NIST" at www.nist.gov), U.S. National Archives & Records Administration ("NARA" at www.archives.gov), American Records Management Association ("ARMA International" at www.arma.org), American National Standards Institute ("ANSI" at www.ansi.org), International Organization for Standardization ("ISO" at www.iso.org), and/or other U.S. Government or professional organizations.

**25.    Read Me Text File**
All deliverables shall include a "read me" text file at the root directory containing: total number of records, total number of images/pages or files, mapping of fields to plainly identify field names, types, lengths, and formats. The file shall also indicate the field name to which images will be linked for viewing, date and time format, and confirmation that the number of files in load files matches the number of files produced.

**26.    Exception Log**
An exception log shall be included, documenting any production anomalies utilizing the electronic Bates number (DOCID or control numbering) assigned during the collection, processing, and production phases.

**27.    Transmittal Letter to Accompany Deliverables**
All deliverables should be accompanied by a transmittal letter including, but not limited to, the production date, case name and number, producing party name, and Bates number range produced.

## ATTACHMENT C

## DOCUMENT REQUESTS

*You* are required by this Demand to produce *any and all* of the following *documents* in *Your* possession, custody, *or* control during the *relevant time period*, unless a different time is specified.

1. *All* agreements or contracts between *You* and *Medicaid*.

2. *All* agreements or contracts between *You* and the *Managed Care Organizations*.

3. *All documents and* communications *related to* any audits or other reviews conducted by the *State* and/or the *MCOs* of *Four Winds*.

4. All *claims* submitted to *Medicaid*.

5. All *documents and communications related to* the submission of *claims* for reimbursement or payment to *Medicaid*, *including* but not limited to policies and procedures governing submission of those *claims*.

6. All *documents* and *communications related to* reimbursements or other payments received by *Four Winds* from *Medicaid*, *including* but not limited to policies and procedures related to those reimbursements or other payments.

7. All *documents and communications related to Your* provision of room and board to beneficiaries or patients, *including* but not limited to the receipt of payment for such services and the source of those payments.

8. All *personnel* files for *therapists*, *including* but not limited to copies of licenses obtained by each employee.

9. All *personnel*, therapy session and patient schedules.

10. All *documents and communications related to* the scheduling of patient therapy sessions.

11. All *documents and communications related to Four Winds* staff meetings.

12. All *documents and communications related to* patient intake sessions.

1

Exh. 1 019

13. All *documents and communications related to* supervision contracts signed between *Four Winds therapists*, *including* but not limited to the rules governing supervision arrangements.

14. *All* policies and procedures *related to* instances when *therapists* are not available to provide therapy sessions.

15. *All* Monthly Practice Analysis Reports.

16. *All* data in the Theranest system for *beneficiaries identifying* services rendered and the *identity* of *personnel* rendering those services by *Four Winds therapists*.

17. All *documents* reviewed *or* used by *You* to prepare, *and* referred to in, the answers to the Interrogatories.

2

Exh. 1 020

## ATTACHMENT D

## INTERROGATORIES

Please answer the following interrogatories in accordance with the Definitions *and* Instructions in **Attachment A**:

1. List all *personnel* that provided therapy services, including patient intake, to *Four Winds* patients/clients during the *relevant time period, including* but not limited to the following details:
   a. Name of the individual, *including* but not limited to employed *therapists*, contracted *therapists*, and/or students;
   b. Dates during which each individual provided services at *Four Winds*;
   c. All licenses obtained by each individual;
   d. The date when each license was obtained;
   e. The date of any license expirations;
   f. The names of all personnel that provided supervision to other therapists, and the identity of the persons supervised;
   g. The names of all personnel who received supervision by other therapists, and the identity of the supervisor.

2. List all state and federal healthcare programs that Four Winds has submitted claims for reimbursement to during the *relevant time period.*

3. *Identify* each *of Your Employees*[1] during the *relevant time period*, including but not limited to the following details:
   a. Name of the individual;
   b. Job title;
   c. Beginning and end dates of employment;
   d. Job responsibilities.

4. If *You* do not have documents responsive to Document Request No. 16 for *any* of the listed beneficiaries, *Identify* the *Beneficiary* for whom *You* do not have the requested *Documents and* please explain why *You* do not have them.

5. *Identify* the *Person*(s) who provided information for the above interrogatory responses.

---

[1] Identify only those employees not identified under Interrogatory No. 1.