IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

IN RE CIVIL INVESTIGATIVE DEMAND                    No. 21mc24 WJ/SCY
No. DNM 20-08

**PROPOSED FINDINGS AND RECOMMENDED DISPOSITION**

This matter is before the Court on the Petition To Set Aside Civil Investigation Demand, Doc. 1, filed by Four Winds Behavioral Health Center and Four Winds Behavioral Health, Inc. (collectively "Four Winds") on June 23, 2021, as well as the United States' Cross-Petition To Enforce Civil Investigative Demand And Memorandum Of Law, Doc. 4, filed on August 27, 2021. The Honorable William P. Johnson referred this matter to me on September 28, 2021 for proposed findings and a recommended disposition under 28 U.S.C. § 636(b). Doc. 13.

For the reasons stated below, I recommend the Court (1) order a partial production from Four Winds, and (2) hold the remaining discovery requests in abeyance subject to the United States' right to file a motion for full enforcement after it has evaluated Four Winds' partial production.

**BACKGROUND**

The United States initiated an investigation under the False Claims Act ("FCA"), 31 U.S.C. §§ 3729-3733, against Four Winds Behavioral Health Center and Four Winds Behavioral Health, Inc. ("Four Winds"), which provides behavioral health care services almost exclusively to Medicaid beneficiaries. Under the FCA, the Attorney General of the United States is obligated to investigate alleged fraud against the public treasury. 31 U.S.C. § 3730(a).

On November 13, 2020, the United States Attorney's Office for the District of New Mexico issued a Civil Investigative Demand ("CID") to investigate allegations that Four Winds violated the False Claims Act by billing the United States for therapy services that (1) were not

provided, (2) were furnished by nonqualified personnel, (3) were billed under the credentials of personnel who did not furnish the services, and/or (4) were billed as inpatient services despite being delivered in an outpatient setting. Doc. 3-2 at 1. The CID contained 17 Requests for Production ("RFP") and five Interrogatories, spanning the time period of January 1, 2014 to November 13, 2020 (the date of service of the CID). Doc. 4 at 3. On January 21, 2021, Four Winds provided responses to Interrogatory Nos. 1, 2 and 3; and RFP No. 9 for the time period of 2019 and 2020. Doc. 4 at 5; Doc. 5 at 1. On May 12, 2021, Four Winds provided responses to RFP Nos. 1, 2, 4, 8, 9, and 13. Doc. 4 at 6. Four Winds indicated it "does not have" documents responsive to RFP Nos. 3, 14 and 15. *Id.* Four Winds lodged objections to RFP Nos. 5, 6, 7, 10, 11, 12, 13 and 17. *Id.*

On June 3, 2021, the United States agreed to limit the remaining production to two years: 2015 and 2016. Doc. 4 at 7. The United States also agreed to reduce the scope of RFP Nos. 5, 6, 10, and 12. *Id.* The United States agreed to hold the remainder of the CID requests in abeyance, subject to future enforcement. *Id.* At the status conference held in this case, however, the United States clarified that it seeks to enforce the original CID in full, rather than the narrowed requests set forth in its June 3 letter. Doc. 17 at 1.

Instead of responding to the United States' June 3 letter, Four Winds filed the present petition to quash the CID. Doc. 1. Four Winds argues that the discovery requests are unduly burdensome and overbroad, and do not comply with FCA requirements. The United States filed a counter petition to enforce the CID. These two petitions led to extensive briefing. The briefing is grouped as it relates to the opening petition and the counterpetition:

- Four Winds' Petition To Set Aside Civil Investigation Demand (Doc. 1)
    - United States' Opposition To Four Winds' Petition To Set Aside Civil Investigative Demand And Motion To Dismiss (Doc. 3)

- - Four Winds' Reply In Support Of Petition To Set Aside CID And Response In Opposition To United States' Motion To Dismiss (Doc. 5)
  - United States' Reply To Response To Opposed Motion To Dismiss And Opposition To Petition (Doc. 11)
  - United States' Surreply In Support Of Petition To Set Aside CID (Doc. 19)
- United States' Counterclaim For Enforcement Of CID And Memorandum Of Law (Doc. 4)
  - Four Winds' Answer To Counterclaim (Cross-Petition) To Enforce CID (Doc. 9)
  - United States' Reply In Support Of Cross-Petition (Doc. 14)

Notwithstanding this extensive briefing, the parties agree that this case boils down to whether the United States' requests impose an undue burden on Four Winds. Doc. 17 at 1. Therefore, I address the other issues raised by the parties only briefly before turning to the question of undue burden.

**I.     Miscellaneous Arguments**

    A.     <u>Timeliness of Four Winds' petition</u>

The FCA sets a deadline to file a petition to modify or set aside a CID. That deadline runs "within 20 days after the date of service of the civil investigative demand, or at any time before the return date specified in the demand, whichever date is earlier, or (ii) within such longer period as may be prescribed in writing by any false claims law investigator identified in the demand." 37 U.S.C. § 3733(j)(2). Twenty days after the service of the CID, and the return date in the CID, are the same date in this case: December 4, 2020. Four Winds filed this lawsuit/petition more than seven months later, on June 23, 2021. The United States asserts it never extended the deadline for Four Winds to file this petition, and Four Winds does not argue otherwise. Doc. 3-1 ¶ 14. Therefore, the United States argues, Four Winds' petition is untimely. Doc. 3 at 6-8.

3

Four Winds counters that the petition is timely because, in its June 3 letter, the United States agreed to narrow the demands in the CID. Doc. 5 at 3. Four Winds reasons that it is inconsistent for the United States to, on June 3, allow it more time to comply with a reduced CID, and then argue that the petition Four Winds filed twenty days after that is untimely. Four Winds, however, cites no authority in support of its argument that the United States' June 3 letter reset a deadline that had expired months earlier.

Four Winds also argues that the statutory time bar is not jurisdictional. Doc. 5 at 3; *see Brezovski v. U.S. Postal Serv.*, 905 F.2d 334, 336 (10th Cir. 1990) (the "Supreme Court has suggested courts may toll a limitations period when a claimant has received inadequate notice, when a motion for appointment of counsel is pending and equity would justify tolling limitations period until motion is resolved, when the court has led plaintiff to believe he has done everything required, or when affirmative misconduct on the part of a defendant lulled plaintiff into inaction"). This may be true, but Four Winds does not assert that any of the situations discussed in *Brezovski* apply here and does not advance any other tolling theory.

I do not engage in a more detailed analysis of Four Winds' timeliness argument, however, because the United States' counter-petition to enforce the CID (Doc. 4) effectively moots this timeliness argument. In responding to the United States' counter-petition to enforce the CID, Four Winds can re-assert all of the same arguments it made in its petition. And, whether Four Winds asserts these arguments offensively in its petition or defensively in its response to the United States' counter-petition, will have no significant impact. At the status conference, the parties agreed that the arguments regarding the petition and cross-petition are similar and the burdens of proof are the same in the petition as in the cross-petition. Doc. 17 at 1. Therefore, I

recommend the Court decline to address whether Four Winds' petition is untimely and deny the United States' motion to dismiss without prejudice.

  B. <u>Whether the CID complies with the FCA</u>

Four Winds argues the CID does not comply with the FCA. Doc. 1 at 2-3. First, Four Winds argues that, under § 3733(a)(2)(A), a CID "shall state the nature of the conduct constituting the alleged violation of a false claims law which is under investigation, and the applicable provision of law alleged to be violated." Four Winds objects that it does not know what the FCA suit is about. The CID, however, does adequately advise Four Winds about the nature of the conduct under investigation and the provision of law this conduct violates. It states: "the company violated the FCA by billing the Government for behavioral health services that (1) were not provided, (2) were furnished by unqualified personnel, (3) were billed under the credentials of personnel who did not furnish the services, and/or (4) were billed as inpatient services despite being delivered in an outpatient setting." Doc. 3-2 at 1.

Second, Four Winds points out that § 3733(a)(2)(B)(i) requires that a CID "describe each class of documentary material to be produced with such definiteness and certainty as to permit such material to be fairly identified." Rather than arguing that the CID contains a vague description of documents to be produced, however, Four Winds asserts the United States has requested too many documents and producing them would be too burdensome. Doc. 1 at 3. Because Four Winds argues burden in support of its vagueness assertion, I recommend rejecting any general assertion Four Winds makes regarding vagueness.

  C. <u>Four Winds' Partial Production</u>

Four Winds argues that because it made a document production of over ten thousand pages in response to the requests, the United States has sufficient information for its investigation and does not need documents responsive to the remaining requests. Doc. 5 at 1-2.

The United States does not contest that Four Winds has produced over ten thousand pages of material. Doc. 19 at 3. It points out, however, that one of the documents Four Winds has produced accounts for nearly half of these pages and that Four Winds has not produced any emails responsive to its request. *Id*. In other words, the United States essentially argues that Four Winds cannot choose what documents to produce, and what documents to withhold, and then successfully argue it never has to produce the documents it withheld because the responsive documents *it chose* to produce were voluminous.

I agree with Four Winds that what it has already produced is relevant to the Court's consideration of the burden and timing of its future production. But the rule Four Winds advocates would allow a company being investigated to shield the most relevant of its documents from production by producing volumes of less relevant material and then asserting that the volume of its partial production excuses full production. The FCA permits the United States to request "any documentary material or information relevant to a false claims law investigation." 31 U.S.C. § 3733(a)(1). The partial production does not somehow render the remaining production irrelevant. Therefore, although the Court should consider the burden of the United States' request (as I do below in Section II), I recommend rejecting Four Winds' argument that it can choose what to produce and then, once a certain volume is reached, unilaterally decide "that is enough" and stop further production.

D.   Relevancy of Request No. 6.

Four Winds advances a limited relevancy argument in its Answer to the Counter-Petition. Doc. 9 at 8-9. Specifically, Four Winds argues that Request No. 6, seeking "all documents and communications related to reimbursement or other payments received by Four Winds from Medicaid" from 2014 through 2020, would require Four Winds to produce "information such as service plans, progress notes, and discharge plans." Doc. 9 at 8-9. Four Winds argues these

6

documents are not even "minimally relevant" to the FCA investigation. I disagree. The United States is investigating, among other things, allegations that services were sometimes billed (1) under the credentials of personnel who did not actually furnish the services and (2) by unqualified personnel. Doc. 3-2 at 1. The answer to "who furnished the services" is likely to be found in documents such as treatment notes discussing the service provided and by whom. Therefore, I recommend rejecting this relevancy argument.

II.     **Undue Burden**

Four Winds argues the CID is unduly burdensome. Doc. 1 at 3-4; Doc. 9 at 6-8. "[W]hen an administrative agency subpoenas corporate books or records, the Fourth Amendment requires that the subpoena be sufficiently limited in scope, relevant in purpose, and specific in directive so that compliance will not be unreasonably burdensome." *See v. City of Seattle*, 387 U.S. 541, 544 (1967); *see also United States v. Morton Salt Co.*, 338 U.S. 632, 652, (1950) (an administrative subpoena is enforceable if the court determines that the inquiry is within the authority of the agency, the demand is not too indefinite, and the information sought is reasonably relevant). The burden of demonstrating the subpoena is indefinite, illegitimate, or unduly burdensome is on the party seeking to evade enforcement. *McLane Co. v. E.E.O.C.*, 137 S. Ct. 1159, 1165 (2017); *Sec. & Exch. Comm'n v. Blackfoot Bituminous, Inc.*, 622 F.2d 512, 515 (10th Cir. 1980).

I have rejected arguments that the requests in the CID are vague or irrelevant. But Four Winds argues that responding to the full CID would require an excessive amount of employee time that it cannot spare. Doc. 9 at 7-8. Four Winds states that, since April 2017, it has submitted over 185,000 claims for Medicaid reimbursement. Doc. 9 at 6-7. To retrieve the documents supporting each of the 185,000 claims, exclusive of any "communications related to" them, would involve tasking Four Winds employees to collect the following documents for each claim:

7

(1) electronic claims submission; (2) service plan; (3) progress notes for individual, group, and/or family therapy sessions; (4) progress notes reflecting progress toward treatment goals; (5) daily log of therapy attendance and time duration; (6) discharge plan. Collecting these documents for certain time periods under investigation, such as 2016 to 2017, would require two full-time employees working twenty hours per week for about a year to complete. *Id.*; Doc. 9-1 (Declaration of Garrett Reincke). Otherwise, Four Winds would be required to hire temporary employees at a significant expense to comply with the CID in a timelier manner. *Id.*

There are a few problems with Four Winds' burden argument. First, Four Winds does not explain why its production for the years 2019-2020 was manageable, and a production for the other years requested was not. Doc. 9-1 ¶¶ 5-6 (discussing the burden in producing documents since April 2017). In addition, the United States notes that Four Winds has claimed it has no responsive documents to the request for "communications" about Medicaid. Doc. 19 at 3. Four Winds objects that it does not "monitor and collect" communications. *Id.* at 1. The United States has not argued that Four Winds has the duty to collect documents not in its possession, custody, or control. But I agree with the United States that it seems implausible that Four Winds has *no* emails about Medicaid on its servers for *any* time period. Four Winds does not address this issue anywhere in its briefing.

In addition, Four Winds does not address the reduced burden of complying with the United States' June 3 revised requests. As a condition to maintaining the argument that an investigative subpoena is overly broad and oppressive, Four Winds must engage in reasonable efforts to reach accommodation with the government. *United States v. Morton Salt Co.*, 338 U.S. 632, 653 (1950) ("Before the courts will hold an order seeking information reports to be arbitrarily excessive, they may expect the supplicant to have made reasonable efforts ... to obtain

reasonable conditions"). Of course, the parties discussed the CID and its demands for over six months. However, the United States offered a significantly revised demand as accommodation and Four Winds' evidence does not address why that accommodation remained unduly burdensome. The June 3 letter narrowed the requests to the years 2015 to 2016, Doc. 3-5 at 3, and Four Winds' evidence of burden focuses on "the 185,000 IOP claims billed since April 2017" and "the entire six-year period 2014-2021 in the CID." Doc. 9-1 ¶¶ 7-8. Four Winds does not present any evidence or arguments addressing the narrowed June 3 requests.

Finally, and most importantly, Four Winds' affidavit of burden does not satisfy the standards laid out in a published Tenth Circuit decision. In *E.E.O.C. v. Citicorp Diners Club, Inc.*, the EEOC issued an administrative subpoena requesting "information from Diners Club concerning its promotion policies." 85 F.2d 1036, 1037 (10th Cir. 1993). Diners Club "declined to provide information regarding its 'within promotion' policy, which information it contended did not exist and would require hundreds of hours of work by Diners Club employees to develop and compile." *Id.* After Diners Club notified the EEOC that it would not comply with the subpoena, the EEOC petitioned the federal district court to enforce the subpoena. *Id.* at 1038. The district court ordered only partial enforcement of the subpoena, but rejected Diners Club's argument that it was unduly burdensome. *Id.* The Tenth Circuit affirmed, likewise rejecting the undue burden argument:

> Diners Club's final argument is that it would be unduly burdensome for it to comply with the EEOC's subpoena. We do not think Diners Club has demonstrated that compliance would be unduly burdensome. At best, it has perhaps shown that compliance would be inconvenient and involve some expense. [The affidavit of one of its employees, Patricia Giordano,] did indicate that much of the information the EEOC seeks does not presently exist in documentary form and must be reconstructed by reviewing personnel files or by interviewing past or present employees. Ms. Giordano further stated in her affidavit that for Diners Club to respond to the subpoena "would require two full-time employees working approximately six months." We also learn from the affidavit that "during the time

9

> period in question, the Englewood facility [of Diners Club] employed on average 1,100 people."
>
> The only evidence offered to show that compliance would be unduly burdensome is the affidavit of Ms. Giordano, and such, in our view, is insufficient to prove that production of the requested information would be unduly burdensome. A court will not excuse compliance with a subpoena for relevant information simply upon the cry of "unduly burdensome." Rather, the employer must show that compliance would unduly disrupt and seriously hinder normal operations of the business. In this connection, Diners Club has not offered any specific estimate of cost involved nor shown how compliance would impact the normal operations of Diners Club.

*Id.* at 1040 (citation omitted).

Four Winds' affidavit of burden presents evidence similar to that the Tenth Circuit found insufficient in *Diners Club*: the CID would require two full-time employees working twenty hours per week for about a year to complete, and result in a significant cost to the company. Doc. 9-1. It does not discuss how this would disrupt or seriously hinder normal operations. It does not offer a specific estimate of cost or shown how compliance would impact the normal operations of Four Winds. Mr. Reincke states that Four Winds "do[es] not have spare employees to task with searching for documents responsive to the CID," Doc. 9-1 ¶ 4, but does not give an idea of how many employees Four Winds has to conduct its normal operations or how it would disrupt normal operations to have these two employees respond to the document requests. Elsewhere, Four Winds argues that a "protracted and expensive investigation could put it out of business and/or force [it] to seek bankruptcy protection," Doc. 5 at 2, but offers no evidence for that statement and no explanation for how diverting the part-time attention of two employees would reduce it to bankruptcy.

Four Winds' failure to establish undue burden is greatest when it comes to the information the United States requested in its June 3 letter for years 2015 and 2016. Four Winds asserts that, since April 2017, it has submitted over 185,000 claims for Medicaid reimbursement

and Garrett Reincke specifically addresses the burden of producing documents since April 2017. Doc. 9 at 6-7; Doc. 9-1 ¶¶ 5-6. Four Winds does not, however, provide any information about the volume of information related to 2015 and 2016. Four Winds does indicate that searching these years will be more difficult because it used a different electronic medical records system for these years. *See* Doc. 9-1 (Declaration of Garrett Reincke). Nonetheless, Four Winds is obligated to establish undue burden and it has presented scarce evidence to establish that undue burden for the years 2015 and 2016.

The years 2015 and 2016 are also significant because these are the years for which the United States requested records in its June 3 compromise letter. In its June 3 letter, the United States also reduced the breadth of records it was requesting for these years. I recommend the Court grant the United States' cross-petition for the records the United States identified in its June 3, 2021 letter and take under advisement the issue of whether it would be unduly burdensome for Four Winds to produce the remaining documents requested in the United States' CID. Once Four Winds produces the documents described in the United States' June 3 letter (which presumably are higher priority for the United States), Four Winds likely will have a better picture of the burden of producing the remaining documents described in the CID and the United States likely will have a better picture of whether the breadth of its remaining requests can be narrowed.

In sum, I recommend denying Four Winds' petition in part, to the extent it requests the Court quash the requests in the June 3 letter, and taking it under advisement in remaining part. I recommend denying without prejudice the United States' motion to dismiss the petition, Doc. 3, subject to refiling after a partial production. I further recommend granting in part the United States' counter-petition, limited to the information requested in the United States' June 3, 2021

11

letter. I recommend taking under advisement the counterpetition with respect to the remaining information requested in the United States' November 13, 2020 CID. Specifically, I recommend ordering:

1. Four Winds' Petition To Set Aside Civil Investigati[ve] Demand (Doc. 1) is DENIED IN PART and TAKEN UNDER ADVISEMENT IN PART.

2. The United States' Motion To Dismiss (Doc. 3) is DENIED WITHOUT PREJUDICE to refiling.

3. The United States' Counterclaim For Enforcement Of CID (Doc. 4) is GRANTED IN PART and TAKEN UNDER ADVISEMENT IN PART.

4. Four Winds shall produce documents responsive to the requests in the United States' June 3, 2021 letter (Doc. 3-5) within 90 days of the date of the Court's order. The parties may agree to reasonable extensions of time, but they must file a notice with the Court advising of those extensions of time. Alternatively, if the parties cannot agree on extensions of time, Four Winds may file an opposed motion with the Court that explains why it cannot meet the Court's deadline and that proposes an alternative deadline.

5. After this limited production is complete, the United States shall evaluate whether the remaining requests in the November 13, 2020 CID (Doc. 3-2) can be narrowed. To the extent the United States determines any of the remaining requests are relevant and necessary, it shall file a motion with the Court specifically tailored to enforcement of those requests within 90 days of the date of the limited production (again, subject to reasonable requests for extensions of time, with notices and/or opposed motions filed with the Court). Responses and replies to the motion will be due according to the Court's Local Rules.

6. If at any point the parties reach an agreement and deem this lawsuit moot, they shall immediately so advise the Court.

*[signature: Steve Yarbrough]*

UNITED STATES MAGISTRATE JUDGE

**THE PARTIES ARE FURTHER NOTIFIED THAT WITHIN 14 DAYS OF SERVICE of a copy of these Proposed Findings and Recommended Disposition they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1). A party must file any objections with the Clerk of the District Court within the fourteen-day period if that party wants to have appellate review of the proposed findings and recommended disposition. If no objections are filed, no appellate review will be allowed.**